IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNY REBECCA NELSON,        ) | |
| )                            | |
| Plaintiff,                   ) | |
| )                            | |
| vs.                          ) | CIVIL ACTION NO. 2:12cv498-TFM |
| )                            | (WO) |
| CAROLYN W. COLVIN,           ) | |
| Acting Commissioner of Social Security,  ) | |
| )                            | |
| Defendant.                   ) | |

**MEMORANDUM OPINION and ORDER**

**I.  PROCEDURAL HISTORY**

Plaintiff Jenny Rebecca Nelson ("Nelson") applied for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act and denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).   Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  INTRODUCTION

#### A.     The Commissioner's Decision

Nelson was 39 years old at the time of the hearing and is a high school graduate.  (R. 43.)  Nelson has prior work experience as a cashier.  (R. 43.)  Nelson alleges that she became

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

disabled on October 30, 2008, due to heel spurs, tendon tears on both feet, tendinitis, rheumatoid arthritis, asthma, heart oblation, and knee pain. (R. 38, 167.) After the hearing, the ALJ found that Nelson suffers from severe impairments of obesity; mild degenerative joint disease, knee; and ankle tendon tear, status post-surgical repair (mortise), as well as non-severe impairments of a thyroid condition; hypertension; and asthma. (R. 20.) The ALJ found that Nelson is unable to perform her past relevant work, but that she retains the residual functional capacity ("RFC") to perform less than the full range of sedentary work. (R. 22.) Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Nelson could perform, including work as an order clerk, small parts assembler, and stringing machine tender. (R. 30.) Accordingly, the ALJ concluded that Nelson is not disabled. (*Id*.)

### B. The Plaintiff's Claims

Nelson presents the following issues for review:

(1)   The ALJ's residual functional capacity findings are not compliant with Social Security Rulings.

(2)   The ALJ's residual functional capacity findings are not based on substantial evidence.

(Doc. No. 14, p. 9, 12.)

## IV. DISCUSSION

### A.     The Residual Functional Capacity Assessment

Nelson asserts that the ALJ's determination that she has the residual functional capacity to perform sedentary work is not supported by substantial evidence. Specifically, she argues that the ALJ substituted his judgment for that of a medical specialist when determining that her knee impairment in combination with her obesity does not meet the twelve-month durational requirement. She contends that the ALJ should have fully developed the record by obtaining a residual functional capacity assessment from a medical specialist or by ordering a consultative examination.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 CFR § 404.1545(a). Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. 20 CFR § 404.1520(f)." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining the effect of Nelson's ankle and foot problems on her residual functional capacity to perform sedentary work, the ALJ found:

> The claimant was to have additional tendon repair as of January 2009. The follow-up report clearly indicates the surgical site was healing well with no erythema and no drainage present. The claimant reported she was doing better.
>
> As of February 2009, she had a full range of motion. As of April 2009, the surgical site has healed; there is some edema; and she is to continue with ankle splint. In May 2009, the claimant reports that "it is a little better at times, then hurts some." The plan is to continue her current therapy.

(R. 26.) The ALJ also found:

> The claimant was cleared for tendon graft surgery. . . . The radiology and surgical reports from UAB showed a left tibialis anterior rupture and repair (3rd anterior tibialis reconstruction) as of May 2010. The record also contains physical therapy notes and a referral for right knee therapy at Tallassee Rehab for right knee osteoarthritis as of July 2010. (Exh. C12F-C16F). Nothing in the therapy notes suggests that the physical therapy for the tibia and ankle surgery had not achieved the results desired. The knee issue was a separate condition.

(R. 27.)

The ALJ's findings regarding Nelson's tendon repairs are fully supported by the medical evidence. For example, during a follow-up visit with Dr. Tommy Garnett, a podiatrist, on October 13, 2008, Nelson reported that her peroneal tendonitis "is better." (R. 311.) Dr. Garnett observed that "there is still some palpable pain today of the anterior tibial tendon. Some pain on the peroneal tendons. Mild edema noted." (*Id*.) On November 4, 2008, Nelson returned to Dr. Garnett complaining of foot pain. (R. 318.) An ultrasound of her left foot indicated significant spot tissue edema. (R. 319.) Dr. Garnett administered an injection of lidocaine and dexamethasone. (R. 318.) On or around January 2009, Nelson underwent surgery to repair her anterior tibial tendon. (R. 316.) During a follow-up appointment on January 6, 2009, Dr. Garnett found no edema, drainange, or cellulitis. (*Id*.) On January 20, 2009, Nelson reported that "it is doing better." (R. 315.) Dr. Garnett found that the surgical site was healing well with no erythema or drainage and recommended "activity to tolerance." (R. 315.) During a follow-up visit on February 19, 2009, Dr. Garnett found full range of motion of the left ankle. (R. 314.) On April 16, 2009, Dr. Garnett observed that there was "still some edema" on the left ankle and assessed anterior tibial

tendonitis. (R. 313.) On May 28, 2009, Nelson reported that her ankle is "a little better at times, then hurts some." (R. 312.) On August 4, 2009, Nelson returned to Dr. Garnett with complaints of left foot pain and swelling. (R. 322.) Dr. Garnett noted edema of bilateral lower extremities with no erythema or ecchymosis and good Dorsey flexion. (*Id.*) He assessed anterior tibial tendonitis secondary to graft left and recommended that she return in two to three months. (*Id.*)

One week later, Nelson presented to Dr. Garnett complaining of right foot pain after accidentally kicking a chair. (R. 321.) Dr. Garnett assessed that Nelson had an interarticular fracture of the right fifth digit, put her toes in a splint, and placed her in an orthopaedic shoe. (*Id.*) During a follow-up visit on September 2, 2009, Dr. Garnett found no edema, erythema, or ecchymosis and determined Nelson's fracture of the right fifth digit was resolved. (R. 320.)

A radiological exam on April 19, 2010, indicates a diagnosis of chronic left tibialis rupture. (R. 413.) In April 2010, Nelson underwent a left ankle anterior rib reconstruction. (R. 487.) On her first day of physical therapy on May 17, 2010, Nelson stated that "she is not in that much pain." (*Id.*) However, on May 19, 2010, the physical therapist noted pain, edema, and inflammation of the left ankle and that Nelson's joint mobility was severe. (R. 489.) As Nelson participated in physical therapy on a routine basis between May and August 2010, her condition gradually improved. (R. 487-509.) On July 9, 2010, the physical therapist noted that Nelson "progressed well with her rehab [and] [s]he is independent with her gait function with mild gait defect with heel strike due to anterior

compartment weakness." (R. 504.)  Upon discharge from Tallassee Rehab in August 2010, the physical therapist noted a subjective pain rating of zero on a ten-point scale and that Nelson "returned to all functional activities." (R. 509.)  Thus, the medical evidence fully supports the ALJ's findings concerning Nelson's foot and ankle condition.

Nelson's assertion that the ALJ erred in determining that her knee condition in combination with her obesity does not meet the twelve-month durational requirement is a misunderstanding of the ALJ's findings.  When determining Nelson's knee impairment in combination with her other impairments is not so functionally limiting as to preclude her from performing sedentary work, the ALJ found as follows:

> . . . [T]he claimant underwent a much later knee problem repaired for surgery.  She conceded this did not start until late 2010.  However, I included limitations for this condition all the same.

(R. 27.)  Thus, the ALJ considered Nelson's knee problems when determining whether she has the residual functional capacity to perform work.  The medical records also support the ALJ's determination.  Nelson began physical therapy for her complaints of knee pain on September 28, 2010.  (R. 510.)  The physical therapist noted a decreased ability to bend, kneel, and perform activities for prolonged time periods.  (R. 511.)  Nelson continued to participate in physical therapy for her knee condition on a routine basis between October 2010 and February 2011.  (R. 513-531.)

On December 8, 2010, Nelson went to Dr. Stephen Samuelson at Southern Orthopaedic Surgeons complaining of right knee pain.  (R. 418.)  Dr. Samuelson noted that

Nelson "is only taking the occasional anti-inflammatory," that her range of motion is 0 to 120 degrees, and that her x-rays "show moderate tricompartmental osteoarthritis and narrowing of both joints and osteophyte formation," and assessed right knee osteoarthritis. (R. 418.) On January 6, 2011, Nelson underwent a right knee diagnostic arthroscopy with tricompartmental chondroplasty and partial lateral meniscectomy. (R. 419.) Dr. Samuelson's post-operative diagnosis was a right knee lateral meniscal tear and chondromalacia. (*Id.*) Upon Nelson's discharge from physical therapy on February 1, 2011, the physical therapist noted minimal to moderate hypomobility, a subjective overall pain rating of 4 on a 10 point scale and that Nelson "returned to all functional activities/previous work with pain level 4/10." (R. 531.) On February 9, 2011, Dr. Samuelson found that "even after knee scope, her symptoms persist," diagnosed Nelson as suffering from severe chondromalacia and left knee osteoarthritis, and prescribed Celebrex. (R. 425.) The ALJ's findings regarding Nelson's knee condition is substantially supported by the medical records. This court has reviewed the record and concludes that the ALJ fully considered Nelson's knee and ankle conditions in combination with her other impairments when determining she has the residual functional capacity to perform sedentary work with limitations.

Plaintiff cites to *Coleman v. Barnhart,* 264 F. Supp. 2d 1007 (S.D. Ala. 2003), as support for her argument that the ALJ erred in failing to obtain a residual functional capacity opinion from a medical source. In *Coleman,* the Court concluded that the ALJ's RFC determination was not supported by substantial evidence where "particularly in light of plaintiff's numerous severe impairments" the RFC was not supported by an assessment

9

completed by a physician. 264 F. Supp. 2d at 1010-11. The decision, however, does not cite to any source of law requiring a physician's assessment for the purposes of making an RFC determination. *Id*

In *Langley v. Astrue,* the court addressed this specific question and concluded that "the law of this Circuit does not require an RFC from a physician." 777 F.Supp.2d 1250, 1257-58 (N.D. Ala. 2011). The court disagreed with *Coleman* because its reasoning "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id.* at 1258-60 (citations omitted.). The Court is persuaded by the reasoning of the *Langley* court. Accordingly, the Court concludes that the ALJ did not err in finding Nelson's RFC without the benefit of a physician's assessment in the record.

Nelson also argues that the ALJ should have secured a consultative physical evaluation. In considering a disability claim, the ALJ must fully and fairly develop the facts, including ordering a consultative examination if necessary to make an informed decision. *See Reeves v. Heckler*, 734 F.2d 519, 522 (11th Cir. 1984). However, an ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render a decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). The regulations do not require the Commissioner to secure a consultative evaluation, nor do they create a right to a consultative examination.

Pursuant to the substantial evidence standard, this court's review is a limited one; the

entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The ALJ evaluated all the evidence before him which led him to conclude that Nelson can perform sedentary work with limitations. It is not the province of the court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead, the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405, F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual functional capacity assessment is consistent with the medical evidence as a whole. After a careful examination of the administrative record, including the medical evidence and Nelson's own testimony, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Nelson's residual functional capacity to perform work.

### B. The Social Security Rulings

Nelson argues that the ALJ erred in assessing her residual functional capacity because he did not provide a function-by-function assessment of Nelson's work-related abilities in accordance with SSR 96-8p.

Social Security Ruling 96-8p requires that the ALJ consider all the evidence and assess the plaintiff's ability to do work-related activities, including sitting, standing, walking,

11

lifting, carrying, pushing, and pulling. See SSR 96-8p at *3, *5 (1996). SSR 96-8p provides that, at Step 4 of the sequential evaluation, the RFC should not be expressed in terms of exertional categories. *Id*. At Step 5, however, the RFC must be expressed in terms of the exertional categories, such as "sedentary," "light," "medium," or "heavy." *Id*.

The court finds that the ALJ adequately evaluated Nelson's functional limitations and restrictions in his decision. The ALJ found that Nelson "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)." (R. 22.) The Regulation provides in part:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 416.967(a). "Occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id*. The court concludes that the ALJ acted in accordance with SSR 96-8p when finding that Nelson can perform work-related functions at the sedentary exertional level.

In addition to finding that Neslon is limited to sedentary work, the ALJ also included a number of specific functional and postural limitations. The ALJ limited Nelson "to a

sit/stand option; no climbing ropes, ladders or scaffolds; no crawling, kneeling, or squatting; no concentrated exposure to pulmonary irritants or cold." (R. 22.) The ALJ also found Nelson "may need to use a stool to prop up her legs during the workday, but not to a point more than a foot from the ground" and limited her to "simple routine and repetitive tasks." (*Id.*) In addition, the ALJ explained the reasons for his findings:

> . . . I considered the allegation about the claimant's need to raise her leg in work environments. I do not find evidence to support this claim. The physical therapy appears to have resolved the ankle and tendon problems even if she may have some residual edema. Furthermore, the doctors use Lasix to help the swelling (Exh C7F). I accommodated the claimant with sedentary work that does not require significant walking or standing, and gave her a sit stand option to avoid needing to stand if she felt more comfortable. The claimant alleged she has to wear special boots, shoes, or orthotics, but the record often shows she does not use them. The record shows she has been prescribed a knee brace (Exhibit 16F). Thus, even when using such devices, her walking would be minimal and when she might have to wear boots, sedentary work would accommodate her. The use of special sneakers and orthotics however seems a personal accommodation that would make work easier, not more difficult. Importantly, I asked the vocational expert whether the use of a footstool would impact the ability to perform the jobs she had identified. The vocational expert indicated that a low level footstool would be appropriate in the jobs noted. Even so, I have not found claimant needs such a device. As noted above, the most recent medical record shows she experiences pain on range of motion only at extremes. However, even if she still needed a footstool on a temporary or intermittent basis, the jobs provided by the vocational expert would allow for it.

(R. 28.) The ALJ thoroughly evaluated Nelson's residual functional capacity to perform work and adequately expressed her functional limitations.[4]

Nelson argues that the ALJ failed to apply SSR 96-8p properly because he did not

---

[4] Nelson argues that the ALJ's accommodation of a footstool is not based on medical evidence. The record indicates that the ALJ included the use of a footstool based on Nelson's own testimony that she prefers to prop her foot on a stool. Nelson, therefore, is entitled to no relief on this basis.

consider the frequency or amount of time Nelson would need to alternate sitting and standing. At the administrative hearing, the ALJ posed a hypothetical to the vocational expert which included "a sit/stand opinion every half hour" and a footstool with one foot off the floor. (R. 95-96.) The ALJ subsequently limited Nelson to "a sit stand option to avoid needing to stand if she felt more comfortable." (R. 28.) A "'common-sense reading of the ALJ's RFC assessment and the hypothetic question he posed to the VE is that the ALJ contemplated a sit/stand opinion at will.'" *Emory v. Astrue*, No. 1:11cv2908-TWT-JFK, 2013 WL 1010660, *8 (N.D. Ga. 2013) (quoting *Lucas v. Astrue*, 2012 WL 6043089, *4 (N.D. Ala. Dec. 4, 2012). Furthermore, Nelson has failed to present evidence showing that her need to sit or stand prevented her from performing the jobs identified by the vocational expert, which she must do in order to be found disabled. *Id*.

Nelson also asserts that the ALJ failed to apply SSR 96-9p properly. Specifically, she argues that a residual functional capacity to perform sedentary work with limitations is rarely applied and that "the impact of an RFC for less than a full range of sedentary work is especially critical for individuals who are under fifty, since a finding of disability would follow at that age even with an RFC for the full range of sedentary work in the absence of transferable skills." (Doc. No. 14, Pl's Comp., p. 9.) Nelson's assertion is a misstatement of the law. Social Security Ruling 96-9p provides:

> The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience *are not usually significant factors in limiting the ability of individuals under age 50* to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range

14

> of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions. On the other hand, since the rules in Table No.1 of appendix 2, "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)," directs a decision of "disabled" for individuals age 50 and over who are limited to a full range of sedentary work, unless the individual has transferable skills or education that provides for direct entry into skilled sedentary work, the impact of an RFC for less than the full range of sedentary work in such individuals is less critical.

S.S.R. 96-9p, 1996 WL 374185, at *2 (emphasis added). Nelson has not yet attained age 50. Thus, a finding of whether Nelson is disabled rests primarily on the nature and extent of her functional limitations and restrictions. *See id.*

Based on the foregoing, the court concludes that the ALJ's determination that Nelson has the residual functional capacity to perform sedentary work with limitations is supported by substantial evidence.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate order will be entered.

DONE this 25th day of April, 2013.

> /s/ Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE